PETITION FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S.C. &2254
BY A PERSON IN STATE CUSTODY

**FILED**
JAMES J. VILT, JR. - CLERK

MAY 2 6 2023

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

Name of Movant          DONALD VIOLETT #114842          CASE NO. 1:23-CV-75-JHM

Place of Confinement          Kentucky State Reformatory
                              3001 West Highway 146
                              LaGrange, Kentucky 40032

IN RE:      **DONALD VIOLETT   vs.   ANNA VALENTINE, Warden**

Name and location of court which entered the judgment of conviction from which relief is sought

Warren Circuit Court
1001 Center Street
Bowling Green, Kentucky 42101

Parties name

Commonwealth of Kentucky v. Donald Violett

Docket number

Indictment No.  1992-CR-0532  &  1992-CR-0626

Length of sentence

754 years imprisonment

Nature of offense(s) involved

Five counts of 1st degree rape [one of five counts dismissed before verdict]
123 counts of dismissed charges

What was your plea                    not guilty

What kind of trial did you have

First Trial was stopped because prosecutor could not get his subpoenaed witnesses to give rebuttal testimony for the defense. Video retrial, by alternative other than original jurors, watched edited videotaped testimony from mistrial.

Did you testify at your trial

Yes, at the first trial no one gave testimony at video retrial.

Did you appeal from the judgment of conviction

Yes, with direct appeal opinion refuted by state trial court's record

If you did, what was the name of court appealed to

Kentucky Supreme Court

Parties names on appeal

Donald Ray Violett v. Commonwealth of Kentucky

Docket number of appeal

93-SC-00806

Result of appeal

Affirmed with opinion refuted by state trial court's record

**Movant vehemently argues the factual predicate for the claims could not have been discovered previously through the exercise of due diligence and the facts underlying the claims, if proven and viewed in light of the new evidence as a whole, would be sufficient to establish be clear and convincing new evidence that, but for constitutional errors, no reasonable fact-finder would have found Movant guilty of the offenses because the prosecution team kept evidence sealed for over 27 years before and after conviction.**

## EXHAUSTION OF NEW EVIDENCE
## ESTABLISHING ACTUAL INNOCENCE CLAIMS

In 2014, a person that worked in the Warren County Kentucky Justice Center started feeding Movant information and sealed court records Movant was convicted and prison incarcerated on dismissed and fabricated criminal charges. The Bowling Green Kentucky Police Department claimed their records were sealed once Movant started to try get a copy as Movant was told the police were sealing evidence in Movant's criminal case.

In 2016, Movant used the Kentucky Supreme Court case <u>Cincinnati Enquirer v. City of Fort Thomas</u>, 406 S.W.3d 842 (Ky 2013) to get the BGPD to unseal the police officer's investigative notes and files.    There, Movant found newly discovered evidence

1] a sworn written statement that exonerates the Movant of the criminal charges that the police officer sworn, during trial, he never got, found in the once-sealed police officer's files after over 25 years;

2] the police officer filed a sworn affidavit with false information to have the Movant arrested and detained without probable cause, and, admitted he never done any investigation, found in the once-sealed police officer's files after over 25 years;

3] the police officer gave perjured grand jury and trial testimony about allegations the alleged victims never told the police officer or the commonwealth; the commonwealth knew the police officer was giving perjured testimony about allegations the alleged victim never told the police or commonwealth about; and, the commonwealth done nothing to correct the police officer's perjured testimony;

3(a)] Angela, alleged victim, gave perjured trial testimony about allegations that were not contained in the commonwealth's indictment; as the allegations were only alleged in the commonwealth's Bill of Particulars and, those allegations were not part of the indictment; and the commonwealth knew Angela was giving perjured trial testimony; and, the commonwealth done nothing to correct Angela's perjured testimony;

3(b)] Alissa, alleged victim, gave perjured trial testimony about allegations that were not contained in the commonwealth's indictment; contrary to a July 10, 1992 sworn statement Alissa gave; the commonwealth knew Alissa was giving perjured testimony about allegations; and, the commonwealth done nothing to correct Alissa's perjured testimony;

3

4]   the Movant received ineffective assistance of trial and direct appeal counsel to render the conviction void;

5]   double jeopardy clause of the 5th Amendment of the U.S. Constitution barred any retrial in movant's criminal case; and,

6]   there is a totally void judgment of conviction in the Movant's criminal case because the Warren Circuit Court modified the original judgment of conviction outside ten (10) day time limit in violation of Kentucky Rule of Civil Procedure (CR) 59.05; and, Kentucky Rule of Criminal Procedure (RCr) 10.02.

A Bowling Green businessman put a private investigator on the Movant's actual innocence claims.

On July 31, 2016, the Movant filed a (RCr) 11.42 motion alleging the Movant received ineffective assistance of trial and direct appeal counsel, based on what was found in the police officer's files and notes.   That is: trial counsel gave the commonwealth letters Movant tried to introduce and, the commonwealth used specific dates from those letters to allege Movant committed the sex acts on those specific dates, when the letters established there was a third-person perpetrator that committed the sex acts on those specific dates.

Since July 31, 2016 Warren Circuit Court refuses to address the Movant's RCr 11.42 actual innocence claims; and, movant received ineffective assistance of direct appeal counsel because he did not raise valid claims found within the court records; such as'  double jeopardy attached once a sua sponte mistrial was announced because there was no urgent or real manifest necessity for a mistrial; and, the commonwealth used letters to get specific dates to allege movant committed the sex acts of those specific dates and the movant was denied the right to use same letters by the trial court ruled KRE 412

On April 24, 2020, Movant filed a " *CR* 60.02 Motion for New Trial or in the Alternate Motion to Dismiss Indictments,"  based on new evidence, obtained from the information and once sealed court records and police files

1]   that establishes Movant was tried, convicted and prison incarcerated of dismissed and fabricated criminal charges;

2] the police officer gave perjured grand jury and trial testimony about allegations the alleged victims never told police of commonwealth about;

4

2(a) the alleged victim gave perjured trial testimony about allegations that were not charged in indictment and, to specific dates found in new evidence, when the letter and diary dates establishes there was a third-person perpetrator that committed the sex crimes on those specific dates.

3] **the police officer filed a sworn affidavit into the court that contained false information to have Movant arrested, tried and convicted on fabricated criminal charges never alleged by the victim;**

Movant then filed a ***Notice to Submit Evidence to Support Motion for New Trial".*** On September 21, 2020, Warren Circuit Court (WCC) issued an order denying Movant right to submit copies of the new evidence, saying: ***"there was no motion for new trial pending before the court nor would one be accepted as the issues were decided decades ago."*** Movant did not receive copies of police officer's investigative notes and files until mid-2016, and those files contained the new evidence. This violated Movant's 1st Amendment rights "to access the courts to seek redress of grievances and present evidence of actual innocence.

## Question

If there was no motion for new trial pending before WCC how the trial judge know what the issues were?

If there was no motion for new trial pending before WCC how could the trial judge deny the motion for new trial?

If there was no motion pending before WCC did how could new evidence establish issues been decided decades ago?

Attorney General (AG) gave the state's appellate courts false defamatory information, that constitutes 'fraud by misrepresentation of the facts.'

Movant appealed that September 21, 2020 order to the Kentucky Court of Appeals, who refused to address Movant's actual innocence claims. The case was passed to the Kentucky Supreme Court – Violett v. Grise – 2022-SC-00425. That Court took the word of the AG that Grise had denied Movant's actual innocence <u>CR 60.02</u> motion for new trial. August 18, 2022 the Kentucky Supreme Court ruled Grise denied Movant's <u>CR 60.02</u> motion for new trial. <u>Violett v. Grise</u>, 2022 Ky. LEXIS 239.

~~September~~ February 16, 2023, Kentucky Supreme Court corrected its August 18, 2022 opinion saying "Violett requested that the Court of Appeals reverse the trial court

5

order denying his motion to submit new evidence in support of his motion for new trial, but left intact Grise's presumed denial of Movant's CR 60.02 motion for new trial. That somewhat corrected order stated:

> Both the WCC and the Court of Appeals have placed Violett under orders **prohibiting** him filing further motions, actions or appeals with respect to his 1993 convictions.

That order clearly establishes the State courts are violating Movant's 1st Amendment rights "to access the courts to seek redress of grievances" and further proves the State courts are "punishing" the Movant "for exercising his constitutional rights to challenge" his unlawful conviction, proving vindictive prosecution under the 14th Amendment.

FURTHERMORE, Movant has tendered a "CR 60.02 / CR 61.02 motion to Be Relieved of Final Judgment" by alleging, and proving the direct appeal opinion in Movant's case is refuted by the state trial court's record. Again, because of "sanctions" placed against the Movant, not allowing him "to file further motions, actions or appeals to his 1993 conviction" the State courts refuses to address Movant's constitutional violation claims or new evidence.

In 2016, Movant tendered a RCr 11.42 Motion to Vacate Judgment and Set-aside Sentence, based new evidence found in the police officer's once-sealed investigative notes and files, that Movant received ineffective assistance of trial and appellate counsel. But, because of the State courts' "sanctions" the State courts will not address the IAofTC or IAofAC claims nor grant Movant any evidentiary hearing so Movant can prove he received IAofTC and IAofAC.

ARGUMENT

The Sixth Circuit has recognized that if a state prisoner makes an "affirmative effort" to allow [state] officials to address his allegations of retaliation and, the [state] officials does not take corrective measures; c.f., Risher v. Lappin, 639 F.3d 236, 240 (6th Cir. 2011), then the state prisoner may proceed to federal court asking for relief, that is not available in the state courts. C.f., Owens v. Keeling, 461 F.3d 763, 768 (6th Cir. 2006).

In this instant case, the state courts have placed a Bill of Attainder against movant by imposing sanctions against Movant because he exercising his rights to challenge his unlawful conviction, based on new evidence, found in the once-sealed police officer's investigative notes and files, for nearly 26 years. For all purposes, Movant claims his 1st, 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution were violated and new evidence will establish he is entitled to a federal Writ of Habeas Corpus relief and immediate release from imprisonment.

**Claim # 1** - Violett was denied due process by prosecutorial misconduct in the prosecution obtaining and using perjured testimony to obtain indictments and conviction that the prosecution knew testimony was false; the prosecution did nothing to correct the perjured testimony to get an illegal conviction on fabricated and dismissed criminal charges.

**Claim # 2** - the commonwealth withheld exculpatory evidence, in form of a sworn [1] written statement, that exonerate Violett; [2] test results of a rape exam kit and semen found in the alleged victim panties; [3] police reports of prior allegations where victim recant; [4] documents alleged victim looked at Violett's evidence [letters and diary] to get specific dates to support the commonwealth's case, when specific letter and diary dates establishes a third-person perpetrator committed the sex crime on those dates.

**Claim # 3** - the police filed a sworn affidavit with false information to have Violett detained, tried, convicted without probable cause.

**Claim # 4** - the commonwealth used a courtroom participant, a Ms. Sartain-Smith, a child psychologist, to coach the alleged victim to give perjured testimony; the commonwealth knew Sartain-Smith's hand gestures to coach the alleged victims to give perjured testimony; and, the commonwealth did nothing to correct the perjured testimony or stop Sartain-Smith hand gestures to get perjured testimony.

**Claim # 5** - Violett had to defend himself against ***uncharged*** criminal allegations never alleged in indictments.

**Claim # 6** - double jeopardy clause of the 5th Amendment to the United States Constitution barred any retrial of Violett's criminal case.

**Claim # 7** - the state highest court tender a direct appeal opinion that is refuted by the state's trial court records and, that erroneous decision has affected Violett's post-trial rights to seek redress.

**Claim # 8** - Violett's actual innocence new evidence has resulted in sanctioning Violett and threats toward Violett that he would be held in contempt if he attempt to challenge his conviction in the state courts.

**Claim # 9** - the method of retrial, after the sua sponte announced mistrial, violates KRS 421.350, as the state trial court did not determine if there was a compelling need to show edited version of prior testimony as no witness was twelve year old or younger.

7

**Claim # 10** - Violett received ineffective assistance of trial and direct appeal lawyer during every critical stage of his criminal case that has affected the outcome of Violett's attempt to exhaust his state remedies.

**Claim # 11** - state trial court read one generic jury instruction and jury marked multiple verdict forms – a unanimous verdict violation. And, the judgment of conviction is void **ab initio**

## REASONS WHY WRIT SHOULD BE GRANTED

**It is the contentions of the Movant that the
Double Jeopardy Clause of the 5th Amendment
of the U.S. Constitution Barred any retrial after
a sua sponte mistrial was announced when there
was no urgent of real manifest necessity**

Donald Violett's jury trial started May 25, 1993.  On May 29, 1993, Violett's defense lawyer [W. Currie Milliken] went to the hospital with severe chest pains that turned to be acid reflux problems.  WCC granted Violett a ten [10] day delay in finishing his jury trial, to see  1] if Milliken could return to finish the jury trial; or 2]  give Violett time to get another lawyer, to finish his jury trial.  The trial judge suggested Violett get Morris Lowe, Milliken's law partner, to finish his jury trial if Milliken could not return. (**TR. TAPE 5, 5/29/93, 8:04-8:25**).

On June 6, 1993, WCC held an ex parte meeting in chambers, where Steve Wilson, and Judge Lewis discussed Wilson could not get his subpoenaed witnesses [police officer and social workers] to give rebuttal testimony, for Lowe, or get them to release their subpoenaed files.   Lowe and Violett sit in the courtroom ready to finish the jury trial.  Judge Lewis came in the courtroom, and announced a sua sponte mistrial without giving Lowe or Violett time to object.  The 5th Amendment Double Jeopardy Clause attached once the mistrial was announced and barred any retrial. See <u>Radford v. Lovelace</u>, 212 S.W.3d 72, 76 – 77 (Ky. 2006) citing <u>RCr 9.22</u>. (**TR. TAPE 6, 6/6/93, 9:02-9:17**)

February 9, 2001, during a <u>RCr 11.42</u> hearing, Milliken was ask by Violett's <u>RCr 11.42</u> lawyer [William Eddy] about a statement the Kentucky Supreme Court made in Violett's direct appeal opinion that Milliken supposedly  "suffered a heart attack" and a mistrial was declared.  Milliken answered, under oath, he did not suffer any heart attack to cause a mistrial.  Milliken was asked a second time about that statement and, Milliken said: "*I did not suffer any heart attack to cause a mistrial.*" (**VCR-16, 2/9/2001, 3:05-3:21**).  Milliken also admitted he was ineffective in Violett's criminal case and if he had submitted his own jury instructions, based on testimony, Violett could not receive a sentence no more than one year. [**Id**].

The 5th Amendment on Double Jeopardy grounds, states once the jury is sworn, double jeopardy attaches unless tyhere is a manifest necessity for a mistrial.  <u>KRS 505.030</u>, reiterates, that:

When a prosecution for a violation of the same statutory provision and is

based upon the same facts as a former prosecution, it is *barred* by the former prosecution .......

[4]   the former prosecution was improperly terminated after the first witness was sworn but before findings were rendered ....

In other words, Wilson could not get a mistrial just because his subpoenaed witnesses [police officer and social workers] refused to give testimony for the defense and, left the courtroom without court's approval. The witnesses are subpoenaed by the court and the parties cannot excuse a subpoenaed witness from testifying.  The state trial court establishes Lowe did not determine if there was aurgent or real manifest necessity for a mistrial, by conducting a hearing, with Lowe and Violett present,  to give an objection double jeopardy would attach because Lowe, a former commonwealth attorney wanted to question the police and social workers about why they refused to release their subpoenaed files.

The clear language, found in <u>Cardine v. Commonwealth</u>, 283 S.W.3d 641 (Ky. 2006), is:

Once jeopardy attaches, prosecution of a defendant before a jury *other than the original jury or contemporaneous impaneled alternates is barred* .........

at the retrial in Violett's case, the commonwealth empaneled a new jury to watch an edited version of the videotaped testimony from the sua sponte mistrial.  Violett vehemently argues he has never had a retrial as the method the commonwealth used is no more than a home movie television program; the court did not serve refreshments.  Violett claim the commonwealth has imposed a "Bill of Attainder" to keep in prison on fabricated criminal charges, which violates Violett's 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution.

## REASONS WHY WRIT SHOULD BE GRANTED

**It is Violett's contentions he was illegal tried, convicted,
and prison incarcerated on fabricated / dismissed  charges
a 4th 6th, 8th and 14th Amendment violation as pertaining
to criminal indictment 1992-CR-00532**

In July 1992, based on the police officer's [Carter] grand jury testimony, Violett was indicted for alleging committing 123 counts of 1st degree rape on his stepdaughter and, 175 counts of 1st degree sodomy on his stepdaughter. [**T.E. 1-39**]. The only statement Carter got from the 14 year old girl was – Violett supposedly had sexual intercourse with her, "*one time in the past,*" on June 16, 1992, in her bedroom, while she was getting for school.

On July 29, 1992, the WCC used its power to dismiss all but 17 counts of the 298 count indictment.  WCC then amended those remaining 17 counts to 1st degree sexual abuse.  June 16-18, 1992, Violett and his wife were attending a church convention at 141 Mount Elmira Road, in Bullitt County Kentucky and, the school system did not conduct school in June 1992.

When Violett's jury trial started May 25, 1993, the commonwealth's open statement was it was "his beliefs" Violett committed all 123 counts of 1st degree rape and the 175 counts of 1st degree sodomy, is why the grand jury indicted and charged Violett with so many charges and, the crimes started January 20, 1989 and end on May 22, 1992 on the stepdaughter.  The commonwealth told it would present sufficient testimony that would prove Violett committed all 298 counts as Violett was charged with.

What the commonwealth did not tell the jury was – on July 29, 1992, WCC dismissed all but 17 counts of the 298 count indictment and, WCC amended those remaining 17 counts to 1st degree sexual abuse.  Violett was never told the offenses had been dismissed or amended to a lesser offense.  What the commonwealth also failed to tell the jury he had the alleged victim look at Violett's evidence [letters and diary] to get dates to support the commonwealth's Bill of Particulars allegations of when the allegedly sex acts occurred.   The letter and  diary  dates  establishes another adult man committed the heinous sex crimes on those specific dates.

Violett's jury trial was a classic  'she said / he said" type case.   The commonwealth  presented  no  physical  or  medical  evidence.    When  the

commonwealth started its testimony, the stepdaughter was first to give testimony for the commonwealth:

Steve Wilson:  when did you move in the defendant's home?

Angela:       AUGUST 1992 (**TR. TAPE 2, 5/25/93, 14:36:31, et seq.**)

Steve Wilson:  when was the first time, that you can remember, anything happening between you and the defendant?

Angela:       JANUARY 1991[id]

Steve Wilson:  January 1991? Are you sure?

Angela:       YES.

Steve Wilson:  well, answer me this.  When was the first time anything happen?

Angela;       JANUARY 1991, AFTER I TURN THIRTEEN [id]

Steve Wilson:   answer me this.  Did anything happen the next month, February?

Angela:       NO!!! (**Tape 2, 14:36:31**)

The testimony of Angela continued to be unintelligent "blabbering" when Angela was ask further leading questions by the prosecutor and, at one point, the defense caught a Ms. Sartain-Smith, a child psychologist, giving hand gestures, as Angela was being ask the commonwealth's leading questions  Angela was able to give testimony about specific dates, listed in the commonwealth's Bill of Particulars.

Violett was over-ruled to his objections when he ask for a directed verdict of acquittal because the prosecutor was violating ethical rules by using a courtroom participant to coach Angela, arguing <u>Sharp v. Commonwealth</u>, 849 S.W.2d 542 (Ky. 1993) applied.  Angela's testimony was her "only fear" of not telling "her mother would lose the house if she told"  this is an economy fear, not defined in the 1992-1993 version of <u>KRS 510.010(2)</u>. (**VCR-16, 2/9/2001, 3:07. et seq.**)

According to well documented sealed new evidence, found through a person that worked in the Warren County Justice Center, the remaining 17 counts left after July 29, 1992, were;

Count #52  —  week of January 20, 1990;

Count #55  —  week of February 03, 1990;

Count #59  -  week of March 01, 1990;

Count # 64  -  week of April 05, 1990;

Count # 68  -  week of May 04, 1990;

Count # 72  -  week of June 10, 1990;

Count # 77  -  week of July 09, 1990;

Count # 81  -  week of August 02, 1990;   [the month Angela moved to my home because she accused her father of molesting her].

Count # 86  -  week of September 05, 1990;

Count # 92  -  week of October 04, 1990;

Count # 96  -  week of November 02, 1990;

Count # 99  -  week of December 06, 1990;

Count # 104  -  week of January 12 1991;  [Angela claim first time occurred after January 22, 1991, her birthday]

Count # 108  -  week of February 19, 1991;  [Angela claim nothing happen in February 1991].

Count # 112  -  week of March 26, 1991;  [Angela never gave testimony for 3/26/91]

Count # 116  -  week of April 03, 1991;  [Angela never gave testimony for 4/3/91]

Count # 120  -  week of May 10, 1991;  [Angela never gave testimony for 5/10/91].

No doubt, Angela did not understand the prosecutor and Carter had fabricated all 298 offenses because, Angela only alleged  "one time in the past" on June 16, 1991, while she was getting ready for school in her bedroom.  The specific dates, listed in the Bill of Particulars came after May 10, 1991, the last date, listed in the amended charges.  Violett was tried, convicted and prison incarcerated on fabricated criminal charges that Angela had never allege.

The commonwealth used Violett's new evidence [letters and diary] to prosecute him on uncharged criminal charges.  The letter and diary dates clearly establishes a third-person perpetrator committed those sex crimes on those specific dates.  This violated Violett's 4th, 5th. 6th, 8th and 14th Amendments to the United States Constitution.  This also establishes an actual innocence claim.

## <u>REASONS WHY WRIT SHOULD BE GRANTED</u>

**It is contentions of Movant there is a totally void judgment in his criminal case, making him illegally incarcerated that violates his 4th, 6th, 8th and 14th Amendments and a Bill of Attainder has him imprisoned to cover up the commonwealth's mistakes.**

In July, 1992, a WCC grand jury indicted Violett on 123 counts of 1st degree rape and, 175 counts of 1st degree sodomy without probable cause because the police only had a statement saying the supposedly sex act occurred "one time in the past" on June 16, 1992 while Angela was getting ready for school. Carter then filed a sworn affidavit saying Angela had said act occurred "six to ten" times.

July 29, 1992, WCC dismissed all but 17 counts of that indictment and amended those remaining 17 counts to 1st degree sexual abuse. Those remaining count dates started January 20, 1990 and end May 10, 1991. During trial, Angela only testified about the specific dates found in the commonwealth's Bill of Particulars. Those dates come from Violett's evidence [letters and diary] that establishes a third-person perpetrator committed those heinous sex crimson those specific dates.

September 22, 1992, another WCC grand jury indicted Violett on six (6) counts of 1st degree rape, based on a one-time interview, done in the commonwealth attorney's office. Carter sworn he did not attend that one-time July 0, 1992 interview with Violett' daughter [Alissa]. Carter sworn, during trial he did not take any written or recorded statement from Alissa because he never spoke with her. Lewis read one (1) general jury instruction to the jury. Wilson gave the jury multiple verdict forms. There was no unanimous verdict because Juror #61 marked all verdict forms guilty.

October 4, 1993, WCC, after a video retrial, before alternates that only watch edited videotaped testimony from a sua sponte mistrial, signed a "Final Judgment of Conviction" order sentencing Violett to 754 year imprisonment on 123 counts of b1st degree sexual abuse at five (5) years each; *17 counts of 1st degree sexual abuse* at three (3) each; and, six (6) counts of 1st degree rape at 60 years each when Juror #61 only marked five (5) verdict forms for criminal case 92-CR-00626, including the October 1985 dismissed allegations. That October 4, 1993 order became final ten (10) days had elapsed with no action taken to correct any errors. <u>RCr 10.02</u>; <u>CR 59.05</u>; <u>Silverburg v. Commonwealth</u>, Ky., 587 S.W.2d 241, 244 (1989).

/4

Realizing Juror #61 had marked guilty on the 17 fabricated counts for 1990, twenty-six (26) days later, [November 1, 1993] Wilson tendered an amended order, attempting to correct those prosecutorial mistakes, by removing the 17 counts for 1990, violating the ten day rule, but the amended order left intact the illegal 754 year imprisonment. The November 1, 1993 is totally void and nullity because WCC lost jurisdiction over Violett's criminal case once that ten days had elapsed. The Kentucky Supreme Court never had jurisdiction to decide any direct appeal in Violett's case. See <u>Commonwealth v. Marcum</u>, 873 S.W.2d 207, 211-212 (Ky. 1994).

The 8th Amendment to the U.S. Constitution, in only three words, imposes the constitutional limitations upon punishment. They cannot be "cruel or unusual". Sentencing and prison incarcerating Violett on fabricated and dismissed criminal charges, with testimony or evidence to prove those charges, after Lewis announced a sua sponte mistrial, to save Wilson's case, falls under that cruel and unusual punishment. Violett, so-far, has made a claim of actual innocence and the state courts will not address Violett's actual innocence claims.

The October 4, 1993 Final Judgment Order became void ***ab initio*** because it had judicial mistakes and could only be corrected by conducting a hearing or new trial. WCC conducted no hearing or new trial. The November 1, 1993 amended order was an attempt to correct those judicial mistakes, but, the ten (10) day rule applied, making the November 1, 1993 amended order totally void.

15

## <u>REASONS WHY WRIT SHOULD BE GRANTED</u>

**Movant contends because of perjured testimony by the Commonwealth's subpoenaed witnesses, Movant was tried, convicted and prison incarcerated on fabricated and dismissed criminal charges, violating Movant's due process rights to confront his accusers, an 1st 6th, 8th 14th Amendment violation.**

Carter testified he never interviewed Alissa. Carter sworn he never took a sworn or recorded statement from Alissa. **(TR. TAPE 3, 5/26/93, 13:54:20-14:15:32)**. For nearly twenty six years, everyone thought Carter told the truth. In mid-2016, Violett was finally able to purchase the once-sealed Carter's investigative notes and files. Violett quickly found Carter had committed perjury because Carter had taken a sworn written statement from Alissa. That statement never mention rape or sodomy. The rape charges were fabricated after the July 10, 1992 one-time interview and, Alissa never knew about the fabrication until Violett's jury trial started.

If Violett could have received Carter's investigative notes and file, Violett could have shown the jury the difference in Alissa's trial testimony and her July 10, 1992 sworn statement for impeachment purposes. Violett could have impeach Carter's trial testimony because Carter sworn he did not attend that July 10, 1992 one-time interview and establish Carter committed perjury when Carter sworn he did not take any sworn written statement from Alissa and further proof the interview was audio recorded. The sworn written statement would have exonerated Violett, to prove Alissa never alleged rape.

Also found in Carter's files were copies from Angela's diary, giving specific details of a third-person perpetrator who committed the heinous sex crimes that Violett had to *defend* himself as those specific detail dates that were listed in the commonwealth's Bill of Particulars. In other words, the commonwealth got to use Violett's evidence [letters and diary] but, Violett did not get to use his evidence because Lewis ruled <u>KRE 412</u> applied when Violett attempted to introduce the letters and diary. Violett was denied a complete defense and to fact his accuser with evidence there was a third-person perpetrator involved.

/ 16

## SUMMARY

June 22, 1992, Violett's wife met with a Sgt. Johnny Watts, of the BGPD, to file a criminal complaint against a Larry McGrew, a twenty year old man who had been caught having sex intercourse with Angela, a fourteen year old girl. Sgt. Watts completed the criminal complaint charging McGrew with statutory rape and custodian interference because McGrew had taken Angela from her home [Violett's home] with her until June 24, 1992. The allegations against Violett came after the criminal complaint was done against McGrew.

Sgt. Watts sent Ms. Violett to the court designated workers' office to file an out of control complaint against Angela because Angela was out of control having sex with multiple men from August 1990 to June 24, 1992. Angela was placed in court-ordered foster care with a family in Oakland Kentucky. Carter removed Angela from that foster care home and put Angela in a house, located on Springhill Drive, in Bowling Green so McGrew could have unlimited sex with Angela.

During trial, Sgt Watts testified he never remember meeting with Violett's wife and did not remember completing the criminal complaint against McGrew. Watts sworn he never sent Ms. Violett to the court designated workers' office so an out-of-control complaint could be filed against Angela. During trial, a Esther Willoughy, the court designated worker testified he completed the out-of-control complaint against Angela but, on orders from the commonwealth attorney's office he was told to destroy the out-of-control complaint and criminal complaint against McGrew..

As stated previous, the allegations against Violett did not come until after the criminal complaint against McGrew was complete. The motive and intent was to accuse Violett to protect McGrew and when McGrew was interviewed, he openly admitted "I had sex with her many times in the past."

## <u>REASONS WHY WRIT SHOULD BE GRANTED</u>

**Movant's Substantial and Procedural Due Process Rights
Under the 14th Amendment of the U. S. Constitution Was
Violated When the State Highest Appellate Court rendered
A Frivolous Decision In Movant's Direct Appeal That Is Not
Supported By State's Trial Court Record That Has Affected
Movant's 1st Amendment Right To Access The Court To Seek
Redress of Grievances Movant's Actual Innocence Claims**

### ISSUE # 1

The Direct Appeal Decision In Movant's Direct Appeal Criminal Case
Cited As *Violett v. Commonwealth, 907 S.W.2d 773(Ky 1995)* Is Not
Supported By State's Trial Court Records Causing An Adverse Effect
On Post-Trial Challenges To Movant's Right to Access Court To Seek
Redress Of Grievances Causing Appellate Court To Issue Frivolous
Opinions

### ISSUE # 2

There Is A Totally Void Judgment Of Conviction In Movant's Criminal Case
Because The State Trial Court Vacated The Original Final Judgment Outside
The Ten Day Rule Of CR 59.05 and Entered An Amended Order Attempting
To Correct Judicial Errors But Left Intact The Illegal Sentencing

### ISSUE # 3

The Commonwealth and Police Withheld Exculpatory Evidence That Could
Had Exonerated The Movant And State Courts Refuses To Address Violation

### ISSUE # 4

Commonwealth's Witnesses Gave Perjured Trial Testimony
Inconsistent From Sworn Statements Given In Commonwealth's
Attorney Office To Deny Movant Of A Fair And Impartial Trial

### ISSUE # 5

Commonwealth Witness [Police Officer] Gave Perjured Grand Jury
And Trial Testimony To Deny Movant A Fair And Impartial Trial

The palpable – substantial – procedural due process violations in that frivolous
direct appeal decision are:

18

1.   *"An examination of record in this case indicates that the prosecution supplied the defendant with all the details of the crime that it had available."*

*Violett, 907 S.W.2d at 776*

October 23, 1992, the Commonwealth filed a "Motion for Extension in Time to Submit Bill of Particulars" asking for additional time so Angela Rampy could "review documents" so that the commonwealth may accurately provide the information requested. (T.E. 54). Kentucky Rule of Criminal Procedure (RCr) 7.26 requires the commonwealth release all *"documents"* it rely on to form the charges contained in the indictment. The Bill of Particulars supplied by the commonwealth only alleged eight (8) specific dates and, the dates came from the letters [diary] Movant tried to introduce in his defense, but, the trial court ruled Kentucky Rule of Evidence [KRE] barred using information from the letters. In other words, the commonwealth got to use information from the letters but, Movant was denied the right to use the same evidence as the letter dates proves a third person perpetrator committed the sex acts on those dates.

As this Court will be aware, it took nearly 27 years to get to purchase the police officer's files and investigative notes. In that new evidence, Movant discovered the police officer [a] withheld a sworn statement that exonerates Movant; [b] proof Movant was charged, arrested, tried, convicted; and, prison incarcerated on fabricated criminal charges never alleged by the supposedly victim; and, [c] the commonwealth withheld forensic testing of the semen founds in the panties the alleged victim wore June 16, 1992 – one specific date listed in the Bill of Particulars; and, [d] the Bill of Particulars dates were after the last date listed in the amended indictment.

Does this Court know how it feels to be in prison when another person committed the sex crimes?

2.   *"There was medical testimony introduced...."*

*Violett, 907 S.W.2d 776-777*

No where in the State's trial court records does it show anyone giving medical testimony. The record establishes the commonwealth only call three (3) witnesses. Alissa Violett and Angela Rampy, the two alleged victim who were trying to protect the third person perpetrator from criminal prosecution; and, Detective Eulin Carter,

the police officer, who is neither trained in the medical field and was never classified to give medical testimony. Carter withheld the test results from the rape kit exam performed at the Medical Center of Bowling Green. The hospital sent Movant the bill for his insurance carrier to pay the cost.

3.    *"during the first trial, following presentation of all evidence, but before jury instructions, defense counsel suffered a heart attack. A mistrial was declared and retrial was scheduled.*

*Violett, 907 S.W.2d 775-776*

During a February 9, 2001 <u>RCr 11.42</u> hearing, Movant's <u>RCr 11.42</u> lawyer [William Eddy] ask W. Currie Milliken about a statement made in Movant's direct appeal decision about Milliken suffering a heart attack. Milliken, under oath, sworn: *"I did not suffer a heart attack to cause any mistrial." (VCR-16, 2/9/2001, 3:07-3:21).* Mr. Eddy ask, a second time, about the heart attack and, Milliken sworn" "I did not suffer a heart attack to cause any mistrial. (Id.)

The State's trial court records establishes May 29, 1993, Movant was granted a ten (10) day delay in finishing his jury trial because Milliken went to the hospital with serious acid indigestion problems. **(Tr. Tape 5, 5/29/93, 8:04-8:27).** The State trial judge {Thomas R. Lewis] suggested Movant get Milliken's law partner, Morris Lowe, to finish the jury trial if Milliken could not return.(Id.)

June 6, 1993, Mr. Lowe was Movant's new lawyer, ready to finish asking rebuttal questions to Carter and subpoenaed social workers why they were still withholding exculpatory evidence in their files. The trial judge met with the prosecutor, in chambers, while Lowe and Movant sit in the courtroom because the commonwealth could not get Carter and the social workers to testify. The trial judge announced a sua sponte mistrial without informing Lowe or Movant.**(Tr. Tape 6, 6/6/93, 9:01-9:24).**

The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution and KRS 505.030 barred a method of retrial. The illegal retrial was the commonwealth edited videotaped testimony from the mistrial. There is a totally void judgment of conviction in Movant's criminal case because it violated the Fifth Amendment Double Jeopardy Clause and Movant's Sixth Amendment Confrontation Clause to face his accusers. The illegal method on retrial was before 'alternates' other than the original jury members.

4.   *"Prior to retrial, both sides agreed that the evidence had been  fully developed at the first trial and both counsel, <u>as well as Violett</u>, agreed to present evidence from the first trial by means of a video tape to the second jury."*

No where in the State's trial court records does it show Movant attended an in chamber meeting when discussing an illegal method on trial.  Violett sit in the courtroom with his family and was never told the illegal method of showing an edited version of previous videotaped testimony as testimony for alternates to watch.  This  illegal method violates Movant's Confrontation Clause of the Sixth Amendment of the U.S. Constitution to face his accusers and present a defense on why the commonwealth was still withholding evidence.  Plus, the Fifth Amendment Double Jeopardy Clause barred any method of retrial.

5.   *"…. To introduce letters, in attempt to introduce sexual activity between the stepdaughter and her boyfriend."*

Carter's investigative notes [June 23, 1992] reveals he knew about the letters [diary] before any investigation had started against Movant.  In other words, Carter knew there was a third-person perpetrator before Movant was accused.  The commonwealth used the letters to fabricated specific dates to support its Bill of Particulars when the dates used establishes a third person perpetrator committed the sex crimes on those specific dates.(T.E. 54; T.E. 55-56).  Movant tried to introduce the letters but, the state trial court ruled KRE 412 applied preventing Movant from using the same evidence the commonwealth used.

6.   *"Violett was charged … from the weeks of May 22, 1982 and January 20, 1989."*

No where in the State's trial court records does it show Movant was charge with any crime between those dates   Indictment No. 1992-CR-0532 alleged the offenses started January 20, 1989 and stopped May 22, 1992 with no evidence to support those dates.  Angela testified she did not move to Movant's home until sometime in August 1990 and nothing supposedly happen until after her birthday – January 22, 1991.  Movant was to defend himself fabricated criminal charges, fabricated by Carter.  The commonwealth's Bill of Particulars gave a separate set of dates, after May 22, 1992.  Movant had to defend himself from uncharged fabricated criminal charges, fabricated after the commonwealth used the letters.

*21*

7.    *'whether it was error to refuse to allow letters written by his stepdaughter to her boyfriend as evidence of past sexual behavior ...''*

The letters were written by an adult man to the stepdaughter.  The letters had specific dates.  The State trial court records indicates the commonwealth had Angela view the letters [documents] to get specific dates to support the commonwealth's bill of particulars because Angela was trying to protect the 20 year old adult man from criminal prosecution for statutory rape and custodian interference.  The specific dates, listed in the bill of particulars establishes a third person perpetrator committed the sex acts on those dates.

### *The Law*

When a state prisoner files a 28 U.S. C. &2254 Writ of Habeas Corpus Petition, the main purpose for the Federal court to look for is ***if*** there was a constitutional violation broken to get a conviction.  In <u>Hon. John W. Potter, Judge vs. Eli Lilly & Co., et al</u>, 926 S.W.2d 449 (Ky. 1996) the trial judge suspected collusion on the part of the parties.  The Kentucky Supreme Court approved for the trial court to reopen the case after judgment, under the inherent authority of trial courts to see that their judgments are not tainted with deceit by ruling:

> "The courts have developed and fashioned [the equity rule] to fulfill
> a universally recognized need for correcting injustice."  <u>Hazel-Atlas
> Co. vs. Hartford-Empire</u>, 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed.2d 12-
> 50 (1944).

The beliefs are under the Rule of Equity, courts have an inherent power to correct mistakes and protect the integrity of the judicial process.  This includes granting relief when there is a constitutional violation involved to get a conviction.

May 29, 1993, during Movant's jury trial, it came to a halt because Milliken went to the hospital with serious acid indigestion problems.  The State trial judge granting Movant a ten (10) day delay to see if Milliken could return to finish the jury trial or, give Movant time to get another lawyer to finish the trial.  The state trial judge suggested Movant get Milliken's law partner (Morris Lowe) to finish the trial.  June 6, 1993 Lowe was Movant's new attorney, ready to finish the trial and rebuttal testimony why the commonwealth's witnesses were still withholding evidence.

The Double Jeopardy Clause of the Fifth Amendment and KRS 505.030 prevented any method of retrial once the State trial judge announced a sua sponte mistrial because there was no manifest necessity for any mistrial just because the commonwealth's witnesses refused to testify and give up court ordered subpoenaed files that contained exculpatory evidence.  Movant asks this Honorable Court to view the constitutional violation of the Double Jeopardy Clause Fifth Amendment that the state courts will not address and have imposed sanctions on the Movant because he come up with new evidence and state courts have threaten Movant with criminal contempt charges if Movant attempts to challenge his illegal conviction in the state courts.

AFFIDAVIT

I _Donald Viollett_, FIRST BEING DULY SWORN TO TELL THE TRUTH, swears the statements, declarations, facts, contained within are true and correct to the best of my knowledge and beliefs and can produce documents and videotapes to support his claims

_Hilary Rucker_                          ID 632630

NOTARY PUBLIC, STATE-AT-LARGE, KENTUCKY

MY COMMISSION EXPIRES:  9-30-2023

23

**THE LAW**

In McQuiggin v. Perkins, 569 U.S. 383, 133 S.Ct. 1924, 185 L.Ed.2d 1019(2013), the U.S. Supreme Court held if a prisoner makes a "convincing showing of actual innocence" – meaning evidence indicating the prisoner did not actually commit the crime for which he was charged or convicted – then he may overcome a procedural bar to consideration of his constitutional claims on the merits if the evidence establishes that it is more likely than not that no reasonable jury would have convicted him in light of the new evidence.  Schlup v. Delo, 513 U.S. 298, 326-27, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); McQuiggin, 133 S.Ct. at 1932-33, 1935-36.

In this instant case, for nearly 26 years the state trial court record were sealed where Violett could not get copies when the court records shows Violett was "convicted" on dismissed criminal charges, an actual innocence claim.  For nearly 26 years everyone thought Carter and Watts told the truth; Carter sworn he did not take any sworn written statement from Alissa and the interview was not recorded; Carter's investigative notes establishes Carter committed perjury.  Watts sworn he never met with Violett's wife – he never completed a criminal complaint against McGrew.  But, Carter's investigative notes clearly establishes Watts committed perjury.  The July 10, 1992 sworn written statement never mentions rape as Violett was charged; an actual innocence claim.

To expand on Violett's "actual innocence" claims, the U.S. Supreme Court has held that:  **"[I]n an extraordinary case, where a constitutional violation has probability resulted in the conviction of one who is actually innocent, a habeas court may grant relief even in the absence of ashowing of cause for the procedural default."** Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).  A claim of actual innocence can be raised if  **"a prisoner can present evidence of innocence so strong that a court cannot have confidence of an outcome of the trial is also satisfied that the trial was free of non-harmless constitutional error, the [prisoner] should be allowed to pass through the gateway and argue the merits of his underlying claims."** Schlup, 513 U.S. at 316.

Here, Violett attempted to introduce evidence [letters and diary] to show motive and intent to accuse him to protect McGrew from criminal prosecution on multiple counts of statutory rape [McGrew admitted in an interview "I had sex with her many times in the past"] and Violett was denied a constitutional 14th Amkendment due process right to face with accuser to establish a third-person perpetrator committed the rapes on the dates alleged in the commonwealth's Bill of Particulars.

24

Violett was denied his constitutional due process 14th Amendment rights to face his accuser to introduce a July 10, 1992 sworn written statement to impeach Alissa and Carter and establish both gave perjured testimony.

Violett also argues Carter and the social workers withheld the D.N.A. test results of the rape kit exam and semen found in the panties Angela wore June 12, 1992, the only date she gave to Carter in her only interview. Violett was denied right to introduce Carter's investigative notes to prove Watts committed perjury when Watts claimed he never spoke with Violett's wife and not completing a criminal complaint against Larry McGrew, charging him with statutory rape and custodian interference before Violett was falsely accused.

---

**State the reasons explaining why you did not present the above claims in any previous petitions, applications, or motions for relief under 28 U.S.C. & 2254?**

The WCC and BGPD kept their files sealed for nearly 26 years. Violett had no access to purchase or obtain those sealed files until mid-2016. Once in possession of new evidence, Violett has attempted to exhaust his state remedies but, the state courts imposed "sanctions" on Violett as a form of vindictive "punishment" because Violett is exercising his rights to challenge his unlawful detention and, state courts have threaten Violett with criminal contempt charges if Violett attempts to attack his illegal detention in the state courts.

THEREFORE, Movant asks that this Court grant the following relief:

1.    conduct hearing(s) so Movant can have the opportunity to be heard and present evidence of his actual innocence.

2.    conduct hearing(s) so Movant can have the opportunity to be heard and present evidence his direct appeal decision is FRIVOLOUS and refuted by the state trial court's records.

3.    conduct hearing(s) so Movant can have the opportunity to be heard and present evidence the Double Jeopardy 5th Amendment Clause barred any methods of retrial.

4.    conduct hearing(s) so Movant can have the opportunity be heard and present evidenced he received ineffective assistance of trial and appellate counsel on first appeal and the deficient performance of counsel affected the outcome of his criminal trial and direct appeal.

5.    conduct hearing(s) so Movant can have the opportunity to be heard and present evidence he is entitled to a Writ of Habeas Corpus and immediate release from his unlawful detention.

6.    conduct hearing(s) so Movant can have the opportunity to be heard and present evidence to have his civil rights restored.

25

## AFFIDAVIT

I, _Donald Violett_, first being duly sworn tom tell the truth, swears that my answers to all questions and my claims, statements, declarations, are true and core4ct to the best of my knowledge and beliefs, with documents to support my claims.

_(signature)_  ID # 632630

NOTARY PUBLIC, STATE-AT-LARGE, KENTUCKY

MY COMMISSION EXPIRES  9-30-2023

## PROOF OF SERVICE

I certify that on 23 day of ~~March~~ MAY, 2023, I mailed a copy of this motion with attachments to Office of Kentucky Attorney General, 700 Capitol Avenue, Frankfort, Kentucky 40601.

_Donald Violett_

DONALD VIOLETT

26

DONALD VIOLETT
KSR 114842
3001 W Hwy 146
LaGrange Ky 40032

KENTUCKY STATE REFORMATORY
LAGRANGE, KY 40032

INMATE MAIL
NOT RESPONSIBLE FOR CONTENTS

NEOPOST          FIRST-
05/23/2023
US POSTAGE $00.
                 ZIP
                 041M

Joseph McKinley, Chief Judge
U.S District Court
Federal Building, Rm 206
423 Frederica St,
Owensboro, Kentucky 42301